**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| BENHUR TESFALIDET<br>HITS BEFORE FAME, LLC<br>901 NEW JERSEY AVE NW<br>#518<br>WASHINGTON, D.C. 20001<br><br>and<br><br>ANTON ALEXANDER<br>AFTER HOURS, LLC<br>9221 W STAYMAN DR<br>ELLICOTT CITY, MD 21042,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>DANIEL HERNANDEZ<br>PKA "TEKASHI 6IX9INE"<br>1650 BROADWAY<br>#505<br>NEW YORK, NY 10019,<br><br>KIFANO JORDAN<br>PKA "SHOTTIE"<br>10 BAWTA PLACE<br>SUITE 114<br>HACKENSACK, NJ 07601,<br><br>STEVE FERGUSON<br>MTA BOOKING INC,<br>4300 W LAKE MARY BLVD<br>SUITE 1010-32<br>LAKE MARY, FL 32746,<br><br>TASHEA FERGUSON<br>MTA BOOKING INC,<br>4300 W LAKE MARY BLVD<br>SUITE 1010-32<br>LAKE MARY, FL 32746, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

| | |
|---|---|
| WILLIAM CORNISH | ) |
| 1ST CALL ENT LLC | ) |
| 414 TIFFANY LANE | ) |
| BRISTOL, CT 06010, | ) |
| | ) |
| CHRISTIAN EHIGIATOR | ) |
| SUPERS WHEREHOUSE INC | ) |
| 929 SCHENECTADY AVE | ) |
| BROOKLYN, NY 11203, AND | ) |
| | ) |
| IHEARTMEDIA INC | ) |
| 125 W 55TH ST | ) |
| NEW YORK, NY 10019 | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## COMPLAINT FOR DAMAGES

**COME NOW PLAINTIFFS**, Mr. Benhur A. Tesfalidet, individually and as a shareholder of Hits Before Fame, LLC, a limited liability company pursuant to the laws of the District of Columbia, and Mr. Anton Alexander, individually and as a shareholder of After Hours, LLC dba "DMV Events", a limited liability company pursuant to the laws of the District of Columbia, by and through undersigned counsel, and hereby file this complaint for damages against Defendants Mr. Daniel Hernandez pka "Teka$hi 6ix9ine", Mr. Kifano Jordan pka "Shottie", Mr. and Mrs. Steve and Tashea Ferguson, individually and as shareholders of MTA Booking, Inc., Mr. William Cornish, individually and as a shareholder of 1st Call ENT LLC, Mr. Christian Ehigiator, individually and as a shareholder of Supers Wherehouse Inc., and iHeartMedia, Inc. for, *inter alia*, breach of contract, tortious interference with contract, unjust enrichment, fraud, and defamation arising from Defendants' actions as described herein.

## FACTS COMMON TO ALL COUNTS

1. Mr. Benhur Tesfalidet is a music industry producer and concert promoter. He owns and operates the business, Hits Before Fame, LLC, a District of Columbia LLC. In the normal course of his business, Mr. Tesfalidet engages top-tier recording artists for the purposes of live performances.

2. In the Fall of 2017, Mr. Tesfalidet became acquainted with Defendant Hernandez.

3. Mr. Tesfalidet became acquainted with Defendant Jordan and Defendant Ehigiator at the same time as he did Defendant Hernandez. Defendant Jordan presented himself to Mr. Tesfalidet, and to the public via interviews and social media, as a member of Defendant Hernandez's management team. Defendant Ehigiator presented himself to Mr. Tesfalidet as Defendant Hernandez's general manager.

4. On October 25, 2017, Mr. Tesfalidet contacted Defendant Ehigiator to engage Defendant Hernandez for a live performance to be delivered on December 8, 2017 in Washington, D.C. at Bliss Nightclub, located at 2122 24th Pl NE, Washington, D.C. 20018, for the sum of $7,000.00 plus the cost of Airbnb and truck rentals, (hereinafter referred to as, the "Event").

5. On October 28, 2017, Mr. Tesfalidet deposited $3,500.00, a fifty-percent deposit per standard industry practice, into Defendant Ehigiator's account to secure the performance date.

6. Sometime thereafter, due to rescheduling on the part of Bliss Nightclub and other factors which both parties mutually understood, Mr. Tesfalidet agreed with Defendant Ehigiator to reschedule the Washington, D.C. performance.

7. During this time, Mr. Tesfalidet continued to engage Defendant Hernandez through Defendant Ehigiator for performances in other jurisdictions, including a performance on December 9, 2017, in Miami.

8. After discussing the reschedule terms with Mr. Tesfalidet, Defendant Ehigiator directed Mr. Tesfalidet to Defendant Cornish, Defendant Hernandez's agent and COO of 1st Call ENT LLC, a limited liability company pursuant to the laws of the State of Connecticut, operating as a talent agency.

9. On February 12, 2018, Defendant Cornish prepared an agreement between Mr. Tesfalidet and Defendant Hernandez for a live performance to be delivered on March 23, 2018 at Echostage, located at 2135 Queens Chapel Rd NE Washington, D.C. 20018, for the sum of $20,000.00 USD.

10. The agreement was fully executed on February 14, 2018 (hereinafter referred to as, the "Agreement"), attached hereto as **Exhibit A**.

11. Defendant Cornish executed the Agreement as directed by Defendant Ehigiator in an email sent on February 14, 2018, attached hereto as **Exhibit B**.

12. Pursuant to the Agreement, a deposit in the amount of $10,000.00 USD was wired to Defendant Ehigiator at Supers Wherehouse Inc., a corporation pursuant to the laws of the State of New York, whose receipt is attached along with the original deposit of $3,500.00 hereto as **Exhibit C**.

13. Supers Wherehouse, Inc., Tekashi69 Touring Inc., and Tekashi69 Publishing Inc. are each registered at the same address. Specifically, 929 Schenectady Ave, Brooklyn, New York 11203.

14. Mr. Tesfalidet engaged Mr. Anton Alexander, to assist with the Event. Mr. Alexander owns and operates After Hours, LLC. In the normal course of his business, Mr. Alexander engages top-tier recording artists for the purposes of live performances and also promotes events on behalf of investors or other event promotion companies.

15. Messrs. Tesfalidet and Alexander agreed to share profits from the Event.

16. Mr. Alexander negotiated with Echostage for the event date.

17. Mr. Alexander was also tasked with promotion and marketing for the event.

18. Due to lack of promotion by Defendant Hernandez, as well as fear for his safety and that of the attendees due to numerous highly publicized street beefs leading up to the Event, Echostage chose to place Hernandez's performance on hold.

19. After several months and extensive attempts to coordinate another date for the Event with Defendants Hernandez, Ehigiator, and Cornish, Mr. Tesfalidet was able to secure the reschedule date of October 28, 2018.

20. The end of October was an ideal time for a concert because of Howard University's fall homecoming, which regularly brings an influx of potential concertgoers to the District of Columbia and, coupled with the reverie of the times, allows for increased sales and earnings unlike any other time of year.

21. Mr. Tesfalidet was required to agree to an increased performance price of $60,000.00 USD, as a condition of final confirmation of the date.

22. Defendant Jordan and Mr. Tesfalidet coordinated and confirmed the delivery of an additional $44,970.00 USD in cash by Mr. Tesfalidet to Defendant Jordan in text messages attached hereto as **Exhibit D.**

23. Mr. Tesfalidet executed an agreement between himself and Mr. Andre de Moya, Managing Partner of Echostage, on September 14, 2018, reserving October 28, 2018, for Defendant Hernandez's performance for the sum of $25,000.00 USD.

24. Mr. Alexander expended $11,497.10 USD in online promotion of the event, as detailed in records attached hereto as **Exhibit E**.

25. At some time after the execution of the Agreement, Defendant Cornish and Defendant Ehigiator were both fired and replaced by Defendant MTA Booking, Inc., a corporation pursuant to the State of Florida, operating as a talent agency.

26. Defendants Mr. and Mrs. Steve and Tashea Ferguson, owners and operators of Defendant MTA Booking, Inc., acted as Defendant Hernandez's agents in concert with Defendant Jordan, Defendant Hernandez's de facto manager.

27. MTA, without cause or right, threatened to cancel the Event on October 11, 2018. In response, Mr. Alexander cited the knowledge and involvement of Defendants Hernandez, Jordan, Ehigiator, Cornish, and Ferguson as well as their assistance by an attorney. The email is attached hereto as **Exhibit F**.

28. Defendant Hernandez recorded a promotional video in which he acknowledged the rescheduled Event as a "make-up date for Howard homecoming". The transcript and video are attached hereto as **Exhibit G**.

29. The promotional video was emailed to Mr. Alexander, Mr. Tesfalidet, Mr. de Moya, Defendant Ehigiator, Defendant Cornish and Mr. Jeremy Weiss in an email from Defendant Mr. Ferguson on October 13, 2018. Defendant Mr. Ferguson also inquired as to whether Mr. Alexander had purchased a hotel room for Defendant Mr. Ferguson's use. See **Exhibit H**.

30. In the months between Mr. Tesfalidet's original engagement of Defendant Hernandez and the date of the Event, Mr. Tesfalidet separately, and successfully, engaged Defendant Hernandez for three other live appearances and/or performances in other jurisdictions with the assistance of Defendants Ehigiator, Tekashi Publishing Inc., and Defendant Cornish in Miami, Florida and one live performance with the assistance of Defendant Jordan, J-5 Records, LLC dba "Tr3y Way Entertainment", and Defendants Mr. and Mrs. Ferguson, by and through Defendant MTA, in Rochester, New York.

31. According to reports from the day of the Event, October 28, 2018, 3,108 tickets, representing 69% of ticket capacity, were pre-sold for a total of $165,336.00 USD, attached hereto as **Exhibit I**.

32. According to reports from the day of the Event, October 28, 2018, $30,300.00 USD was generated in presold VIP tables, attached as **Exhibit J**, a number to be applied to bar sales pursuant to the Echostage agreement.

33. Mr. Alexander engaged a recording artist, publicly known as, "Rico Nasty", as an opening act whom he paid $8,500.00 USD for the purposes of increasing the Event's marketing appeal.

34. Mr. Alexander also engaged three other recording artists as opening acts, namely, Louis Machado, pka "Louie Bagz", Adrien Stinger, and Victor Njomo, pka "Krown Vic". These artists paid Mr. Alexander $3,000.00 USD, $5,000.00 USD, and $3,000.00 USD, respectively.

35. Mr. Tesfalidet corresponded with Defendant Mrs. Ferguson via text and by phone on October 27, 2018, in regard to hotel accommodations for Defendant Hernandez, attached hereto as **Exhibit K**.

36. At 7:25 PM on October 27, 2018, Mr. Tesfalidet requested that Defendant Mrs. Ferguson direct Defendant Hernandez to upload an Instagram post of a promotional flyer for the Event. Defendant Hernandez had not yet posted any promotional materials to his social media accounts or otherwise promoted the Event, although he had recorded the promotional video at MTA's direction.

37. Defendant Mrs. Ferguson did not respond to Mr. Tesfalidet's request. Defendant Hernandez did not post the flyer.

38. Based on Defendant Hernandez's promotional video and the ongoing collaborative organization of logistics, both Messrs. Tesfalidet and Alexander believed that Defendant Hernandez would honor the Agreement as promised.

39. On the date of the Event, October 28, 2018, Mr. Tesfalidet again contacted Defendant Mrs. Ferguson, as the primary point of contact on the day of the Event. Defendant Mrs. Ferguson informed Mr. Tesfalidet that she had directed Defendant Hernandez to post the flyer via text messages included in **Exhibit K**.

40. Defendants Mrs. Ferguson and Jordan began to evade phone calls. At 6:30 PM, and after several missed calls, Defendant Mrs. Ferguson told Mr. Tesfalidet that she was speaking with Defendant Hernandez's security in regard to Event logistics.

41. Mr. Tesfalidet was unable to get a definitive response on Defendant Hernandez's arrival time, set time, and meet and greet schedule.

42. Defendant Mrs. Ferguson claimed that neither she nor Defendant Jordan was able to reach Defendant Hernandez.

43. Defendant Hernandez was simultaneously seen online at home doing an Instagram interview with the online blog, the Shaderoom.

44. Eager would-be attendees of the Event arrived at Echostage as early as noon on October 28, 2018. The line grew to nearly one thousand people who had chosen to arrive early, willing to withstand the intermittent rain and cold temperatures of that day.

45. Social media posts on October 28, 2018, told of the many attendees who'd planned to attend for months, either as the ending to their Howard homecoming celebrations, Halloween celebrations, or simply as devoted fans of Defendant Hernandez, and had stood in line for several hours. Selected examples are attached as **Exhibit L**.

46. Defendant Hernandez's impending presence at Echostage was more exciting than the average concert in that it was charged with the excitement of his fans, his nationality and its current resurgence in hip-hop at-large, his notoriety in the media, and his success in a court hearing, winning his freedom two days before the Event. These factors played into the ticketed success of the Event and set the stage for what was due to be one of the most lucrative events to date for both Hits Before Fame, LLC and After Hours, LLC.

47. As the evening continued, Messrs Tesfalidet and Alexander continued to attempt to contact Defendant Mrs. Ferguson and Defendant Jordan in regard to Defendant Hernandez's arrival and performance time, offering alternative means of transportation, considering the remaining time before the Event, such as a private jet or train.

48. Defendant Mrs. Ferguson continued to claim that neither she nor Defendant Jordan could contact Defendant Hernandez as she selectively answered calls and texts from Messrs. Tesfalidet and Alexander.

49. Upon description of the line and attendance predictions, Defendant Mrs. Ferguson asked that Mr. Tesfalidet send her a video of the line so that she could send it to Defendant Jordan in efforts to spur Defendant Hernandez to respond.

50. Mr. Tesfalidet sent a video of the attendees in line to Defendant Mrs. Ferguson but received no response to calls or texts for about thirty minutes.  See **Exhibit K**.

51. As the line continued to grow, reaching the street light on Bladensburg Rd NE and turning the corner, several additional police officers and transport vehicles arrived on the scene at the behest of Mr. de Moya.

52. Around 7:00 PM, Mr. Tesfalidet spoke to Defendant Mrs. Ferguson via phone and text, informing her that Echostage would cancel the Event if he could not provide definite evidence of Defendant Hernandez's estimated time of arrival and that Echostage was considering filing suit against Messrs. Tesfalidet and Alexander.

53. Defendant Mrs. Ferguson again claimed that Defendant Jordan was unable to reach Defendant Hernandez and directed Mr. Tesfalidet to draft a demand letter based upon breach of contract. See **Exhibit K**.

54. At 7:30 PM, fearing a riot due to the crowd's increasingly frequent and animated chanting for Defendant Hernandez, Mr. de Moya was forced to cancel the Event as doors were due to open at 8 PM.

55. Messrs. Tesfalidet and Alexander were forced to turn away 3,108 ticketed customers, including the nearly one thousand attendees standing in line.

56. $165,336.00 USD in pre-sold ticket proceeds were immediately refunded as well as $30,300.00 USD in VIP table proceeds.

57. The cancellation of the Event led to a litany of negative comments and threats via social media and text message aimed at both Messrs. Tesfalidet and Alexander. Selected comments are attached hereto as **Exhibit M**.

58. Mr. Alexander's Instagram account, "DMVEvents", was the source of much of the online promotion of the Event, garnering as much as 131,964 views from its 49,700 followers on a single post related to the Event.

59. Shortly after the cancellation of the Event, Defendant Hernandez appeared, and performed, at Powerhouse NJ, a WWPR-FM event. WWPR-FM pka "Power 105.1" is owned by iHeartMedia, Inc, a corporation pursuant to the laws of the State of Texas.

60. Upon information and belief, Defendant Hernandez personally planned this appearance with WWPR-FM personnel as well as with the assistance of MTA Booking, Inc., his agency at the time.

61. Defendant Hernandez's performance at Powerhouse NJ led to increased negative social media commentary, additional threats, and trolling of Mr. Tesfalidet, Mr. Alexander and Echostage's social media accounts.

62. Mr. Alexander noticed diminished sales rates on other Events he is currently marketing which are to be held at Echostage.

63. Due to Echostage's losses and negative online commentary, as well as its attempt to prevent dilution of the Echostage brand, Mr. de Moya has informed Messrs. Tesfalidet and Alexander that Echostage intends to file suit against them for losses incurred in relation to the Event.

64. This has limited Messrs. Tesfalidet and Alexander's ability to engage Echostage, as well as other District of Columbia concert venues, jointly and severally.

65. Defendant Hernandez also suffered negative commentary due to his cancellation of the Event and choice to appear at Powerhouse NJ. In response to the outcry by his fans in the District of Columbia, Maryland, and Virginia, as well as news commentary from TMZ and its competitors, Defendant Hernandez addressed the cancellation on Instagram in a livestream video. The transcript of the video is attached hereto as **Exhibit N**.

66. Within the statement, Defendant Hernandez defames Messrs. Tesfalidet and Alexander, denigrating their business acumen, common-sense, and their trustworthiness as promoters, as well as implicitly conflating their businesses into one entity.

67. *Inter alia*, Defendant Hernandez claims that Messrs. Tesfalidet and Alexander did not pay him and that the individuals claiming to work with him did not work with him.

68. Defendant Hernandez's statements are patently untrue and are extremely damaging because Messrs. Tesfalidet and Alexander are each engaged in an entirely reputation-based industry.

69. Due to Defendant Hernandez's livestream post, Mr. Alexander has continued to suffer increasingly diminishing rates of ticket and VIP table presale income for other events including, a key calendar event set for New Year's Eve.

70. Defendant Hernandez's statement has impacted the ability of both Messrs. Tesfalidet and Mr. Alexander to engage opening acts for other events, to secure VIP table sales, and to engage investors and promoters.

71. Mr. Tesfalidet has since been forced to deactivate his Instagram account due to negative comments.

## COUNT I
## BREACH OF CONTRACT

72. Messrs. Tesfalidet and Alexander hereby reallege and incorporate paragraphs 1-71, as though fully set forth herein.

73. In relevant part, the Agreement entered into by and between Mr. Tesfalidet and Defendant Hernandez required Defendant Hernandez to deliver a live musical performance on March 23, 2018, at Echostage, located at 2135 Queens Chapel Rd NE Washington, D.C. 20018, for the sum of $20,000.00 USD which was later rescheduled to October 28, 2018 for the sum of $60,000.00 USD at the same location.

74. Despite Mr. Tesfalidet's complete performance of bargained for duties, as well as heavy investment in reliance upon Defendant Hernandez's promises, Defendant Hernandez refused to perform his duties under the Agreement.

75. Despite having received compensation, Defendant Hernandez failed to honor his agreement to perform on October 28, 2018.

76. Defendant Hernandez's failure to perform as promised constitutes a material breach of the Agreement as described herein.

77. Therefore, and based on the reasons set forth herein, Messrs. Tesfalidet and Alexander ask this Court to find that Defendant Hernandez did in fact breach the Agreement.

78. Consequent to the breach of contract, Messrs. Tesfalidet and Alexander suffered substantial pecuniary losses not less than $300,000.00 USD, to be determined with specificity at a trial on the merits.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT

79. Messrs. Tesfalidet and Alexander hereby reallege and incorporate paragraphs 1-78 inclusive, as though fully set forth herein.

80. Messrs. Tesfalidet and Alexander aggressively promoted the Event.

81. Defendant iHeartMedia, by and through its subsidiary WWPR-FM, with constructive notice of Defendant Hernandez's Agreement with Mr. Tesfalidet, and despite prolific advertisement and promotion of the Event, thereby informing other businesses of the Agreement, engaged or facilitated Defendant Hernandez's performance on October 28, 2018.

82. None of the revenue earned by Defendant iHeartMedia in connection to the Powerhouse NJ event was paid to Messrs. Tesfalidet and Alexander.

83. As a result of its actions, Defendant iHeartMedia Inc. did interfere with the performance of the Agreement reasonably expected to accrue to the benefit of Messrs. Tesfalidet and Alexander and thereby caused them to suffer financial harm and injury to their business reputations.

84. Consequent to the tortious interference with the performance of the Agreement, Messrs. Tesfalidet and Alexander suffered substantial pecuniary losses not less than $300,000.00 USD, to be determined with specificity at a trial on the merits.

## COUNT III
## UNJUST ENRICHMENT

85. Messrs. Tesfalidet and Alexander hereby reallege and incorporate paragraphs 1-84 inclusive, as though fully set forth herein.

86. Defendants Hernandez, Jordan, MTA Booking, Inc., 1st Call ENT LLC and Supers

Wherehouse Inc., without evidence of services provided that possibly could justify the taking, effectively stole funds advanced by Mr. Tesfalidet for Defendant Hernandez's live performance pursuant to the Agreement negotiated by Defendants Hernandez, Cornish, Ehigiator, and Jordan and later logistically supported through agency duties by Defendants Mr. and Mrs. Ferguson.

87. Defendants Hernandez, Jordan, MTA Booking, Inc., 1st Call ENT LLC and Supers Wherehouse Inc. also benefited from the promotion expenses advanced by Mr. Alexander in terms of notoriety, record streams and sales, ticket sales at other shows and other sundry externalities.

88. As a result of the actions of Defendants Hernandez, Jordan, MTA Booking, Inc., 1st Call ENT LLC and Supers Wherehouse Inc., Defendants Hernandez, Jordan, MTA Booking, Inc., 1st Call ENT LLC and Supers Wherehouse Inc. unjustly enriched themselves, to the detriment of Messrs. Tesfalidet and Alexander causing Messrs. Tesfalidet and Alexander to incur further financial harm.

89. Therefore, based on the reasons set forth herein, Messrs. Tesfalidet and Alexander ask this Court to find that Defendants Hernandez, Jordan, MTA Booking, Inc., 1st Call ENT LLC and Supers Wherehouse Inc., did in fact enrich themselves unjustly and without merit to the detriment of Messrs. Tesfalidet and Alexander and further that said funds be returned, with interest.

## COUNT IV
## FRAUD IN THE FIRST DEGREE

90. Messrs. Tesfalidet and Alexander hereby reallege and incorporate paragraphs 1-89 inclusive, as though fully set forth herein.

91. Defendants Hernandez, Jordan, MTA Booking, Inc., 1st Call ENT LLC and Supers Wherehouse Inc., by engaging Mr. Tesfalidet with the intent not to perform the terms of the Agreement while simultaneously delivering promotional materials inducing further reliance upon false promises, did conduct a scheme to obtain the property of Mr. Tesfalidet by means of false promises and representations that Defendant Hernandez would perform under the terms of the Agreement.

92. Upon information and belief ascertained from news coverage, Defendant Hernandez, together with Defendants Jordan, MTA Booking, Inc., 1st Call ENT LLC and Supers Wherehouse Inc., either jointly or severally in various instances, have enacted the same "no-show" scheme on several other promoters.

93. As a result of the above actions, Defendants Hernandez, 1st Call ENT LLC, and Supers Wherehouse Inc. did obtain $13,500.00 USD from Mr. Tesfalidet and Defendants Hernandez and Jordan did obtain $44,970.00 USD from Mr. Tesfalidet.

94. Therefore, based on the reasons set forth herein, Mr. Tesfalidet asks this Court to find that Defendants Hernandez, Jordan, MTA Booking, Inc., 1st Call ENT LLC and Supers Wherehouse Inc., did in fact, by means of false representation, defraud and thereby obtain the funds of Mr. Tesfalidet and further that said funds be returned, with interest.

95. Additionally, based on the reasons set forth herein, Messrs. Tesfalidet and Alexander request that the Court, in finding that Defendants did commit fraud, award punitive damages that the Court deems appropriate.

## COUNT V
## FRAUD AS TO FUTURE PERFORMANCE

96. Messrs. Tesfalidet and Alexander hereby reallege and incorporate paragraphs 1-95 inclusive, as though fully set forth herein.

97. Defendants Hernandez, Jordan, MTA Booking, Inc., 1st Call ENT LLC and Supers Wherehouse Inc., by engaging Mr. Tesfalidet with the promise of a future performance pursuant to the Agreement, together with the intent not to perform, as to Defendant Hernandez, and the knowledge that such future performance would not in fact be performed, as to Defendants Jordan, MTA Booking, Inc., 1st Call ENT LLC and Supers Wherehouse Inc., did in fact induce Mr. Tesfalidet's payments, totaling $58,470.00 USD.

98. Therefore, based on the reasons set forth herein, Mr. Tesfalidet asks this Court to find that Defendants Hernandez, Jordan, MTA Booking, Inc., 1st Call ENT LLC and Supers Wherehouse Inc., in obtaining the sum of $58,470.00 USD from Mr. Tesfalidet, did in fact commit fraud as to a future performance upon Mr. Tesfalidet and further that said funds be returned, with interest.

99. Additionally, based on the reasons set forth herein, Messrs. Tesfalidet and Alexander request that the Court, in finding that Defendants did commit fraud with the promise of future performance, award punitive damages that the Court deems appropriate.

## COUNT VI
## DEFAMATION

100. Messrs. Tesfalidet and Alexander hereby reallege and incorporate paragraphs 1-99, as though fully set forth herein.

101. Defendant Hernandez knowingly and intentionally published a false and defamatory statement concerning the Plaintiffs, Messrs. Tesfalidet and Alexander, denigrating their business acumen, common-sense, and their trustworthiness as promoters, claiming, *inter alia*, that the Plaintiffs did not pay him and that the individuals who represented themselves to Plaintiffs as agents of Defendant Hernandez did not in fact work with Defendant Hernandez, in a livestream video post to Instagram.

102. Defendant Hernandez's knowingly untrue statements, which effectively bestowed infamy upon the Messrs. Tesfalidet and Alexander for what was presented as a ridiculous business decision, injured them in their profession, as well as their community standing, and lowered their estimation in the community, particularly because the Plaintiffs are each engaged in an intrinsically reputation-based industry. Defendant Hernandez's statement did in fact lead Mr. Alexander to suffer increasingly diminished sales rates on other events as well as each of the Plaintiffs suffering an impact to their professional reputations for trustworthiness, reliability, and for possessing legitimate business connections to major artists and agencies.

103. As a result of his actions, Defendant Hernandez caused the Plaintiffs to suffer financial harm and injury to their personal and business reputations, specifically including, but not limited to, diminished presales, a diminished ability to engage opening acts, investors, and promoters for other events, and Mr. Tesfalidet's loss of much of his ability to market as he has been forced to deactivate his Instagram account due to an inundation of negative comments.

104. Therefore, based on the reasons set forth herein, Messrs. Tesfalidet and Alexander ask this Court to find that Defendant Hernandez did, in fact, defame them jointly and

severally and that they suffered losses not less than $300,000.00 USD, to be determined with specificity at a trial on the merits.

105. Additionally, based on the reasons set forth herein, Messrs. Tesfalidet and Alexander ask this Court to find that Defendant Hernandez did, in fact, defame them jointly and severally and that they suffered economic losses as a result.

### Count VII
### PROMISSORY ESTOPPEL

106. Messrs. Tesfalidet and Alexander hereby reallege and incorporate paragraphs 1-105, as though fully set forth herein.

107. Plaintiffs, Messrs. Tesfalidet and Alexander, further allege that upon any argument by Defendants against contract existence, action under the doctrine of Promissory Estoppel.

108. Defendants promised Plaintiffs that Defendant Hernandez would deliver a live musical performance on March 23, 2018, at Echostage, located at 2135 Queens Chapel Rd NE Washington, D.C. 20018, for the sum of $20,000.00 USD which was later rescheduled to October 28, 2018 for the sum of $60,000.00 USD at the same location.

109. Plaintiffs, Messrs. Tesfalidet and Alexander, in reliance of the promise by Defendants, expended funds for promotion and collected monies for tickets and tables, all of which were paid back, to the detriment of the Promisee.

110. For the aforementioned reasons, it was reasonably foreseeable to Defendants (Promisor) that Plaintiffs (Promisee) would act upon the Defendant's promise to

perform a live concert. Hence subsequent promotion of the concert and associated costs created a substantial economic loss and burden to Plaintiffs business interests immediately after.

111. Per the circumstances discussed above, Plaintiffs request compensation by the Court in the form of compensatory and punitive damages as a result of the detriment that the Plaintiffs suffered in reliance on Defendant Hernandez's promise to perform at the scheduled concert.

## PRAYER FOR RELIEF

**WHEREFORE**, and based on the reasons set forth herein, Plaintiffs demand judgment against Defendants jointly in an amount in excess of Three Hundred Thousand Dollars ($300,000.00) for compensatory damages; and in an amount in excess of Five Million Dollars ($5,000,000.00) in punitive damages against the above named Defendants, as well as legal fees and such other relief this court deems appropriate and just.

## JURY DEMAND

Plaintiffs request a trial by jury on all of the above claims.


**Respectfully Submitted**,

/s/_____
Donald M. Temple, Esq.
THE LAW OFFICES OF DONALD M. TEMPLE
1310 L St NW #750
Washington, D.C. 20005
Phone: (202) 628-1101
Fax: (202) 628-1149
DTempleLaw@gmail.com
*Counsel for Plaintiffs Tesfalidet and Alexander*